UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-21085-CIV-COOKE/GOODMAN

BLANCA PRIETO,

    Plaintiff,

vs.

TOTAL RENAL CARE, INC.
d/b/a DAVITA d/b/a
FLORIDA RENAL CARE,

    Defendant.
_____/

## OMNIBUS ORDER

Plaintiff brings this action on behalf of the decedent, Rodolfo Pietro alleging Nursing Negligence and Healthcare Center Liability by Defendant Total Renal Care, Inc. Plaintiff filed a Motion for Summary Judgment (ECF No. 35) on August 31, 2018, arguing, through deposition testimony, that Defendant essentially admitted that it breached its duty to the deceased[1]. Defendant also moved for summary judgment, disputing liability (ECF No. 38). Defendant subsequently filed an Amended Motion for Final Summary Judgment (ECF No. 41). Plaintiff thereafter filed a motion to strike Defendant's expert whose testimony was used in support of Defendant's Motion for Summary Judgment (ECF No. 50). Defendant thereafter moved to strike Plaintiff's Rule 26(a)(2) Disclosure as Untimely, seeking to exclude Plaintiff's witness as an expert (ECF No. 51).

After reviewing Plaintiff's Motion for Summary Judgment, Defendant's Response (ECF No. 43), Plaintiff's Reply (ECF No. 44), Defendants' Motion for Summary Judgment, Plaintiffs' Amended Response (ECF No. 40), Plaintiff's Daubert Motion to Strike Defendant's Expert (ECF No. 50), Defendant's Response (ECF No. 54), Defendant's Motion to Strike Plaintiff's Rule 26(a)(2) Disclosure (ECF No. 51), Plaintiff's Response in opposition (ECF No. 51), the record, and relevant legal authorities, all motions are denied.

---

[1] The Court was inclined to strike Plaintiff's Motion for Summary Judgment as it is nothing but mere copy and paste of deposition testimonies of witnesses. The Court advises Plaintiff to refer to Federal Rules of Civil Procedure and follow the guidelines of motion for summary judgment. Furthermore, Plaintiff has failed to comply with local rules of this Court. Plaintiff failed to include a statement of material facts, "supported by specific references to pleadings, depositions, answers to interrogatories, admission, and affidavits on file with the Court…" See Local Rule 56.1.

# I. BACKGROUND

Defendant is a renal dialysis center.[2] ECF No. 38, p. 1. Mr. Prieto was a 76-year-old man with various health issues, including an amputated leg. ECF No. 35-1. During the alleged incident, Mr. Prieto was staying at an assisted living rehabilitation center and received consistent dialysis treatments at Defendant's facilities. *Id.* Since the amputation of his leg, on August 15, 2015, Mr. Prieto's treating nephrologist, doctor Hasan Ali, ordered that Mr. Prieto be transported to and from Total Renal Care via a stretcher. *Id.*

On January 2, 2016, the American Services Company (a third-party transportation company) transported Mr. Prieto on a stretcher to Total Renal Care. *Id.*; ECF No. 35. After Mr. Prieto received his necessary dialysis, he exited the facility via wheelchair. *Id.* On the way to his nursing home, the transportation van came to an abrupt stop, causing Mr. Prieto to fly forward, out of his wheelchair, sustaining various injuries. *Id.* Mr. Prieto died six months after the incident. *Id.*

Plaintiff moves for summary judgment, arguing that Defendant owed the decedent a duty to ensure that he was transported to and from their dialysis treatment center via a stretcher and on the day of the incident, Defendant breached that duty, allowing Mr. Pierto to leave the facility on a wheelchair, resulting in his death. Plaintiff argues that but for Total Renal Care's failure to send Mr. Prieto to his nursing home via a stretcher, he would not have sustained injuries from a sudden traffic stop.

Defendant moves for summary judgment, arguing that the transportation service company is the negligent party in this action as they failed to properly secure Mr. Prieto to his wheelchair. Defendant essentially contends that "the lack of properly securing Mr. Prieto, such as the use of a seatbelt harness, is the superseding cause of Mr. Prieto's unfortunate injuries." ECF No. 38 at 2. In support, Defendant includes an affidavit of an accident reconstruction specialist, who opined that Mr. Pierto's injuries were not a result of his transportation method but the driver's failure to properly secure Mr. Prieto to his wheelchair. *See* ECF No. 328-5.

The parties disagree over the following: whether the affidavit Plaintiff attached to her complaint suffices to establish the applicable standard of care in the instant case; whether the medical order by decedent's nephrologist, stating that Plaintiff should be transported via a stretcher, imputes liability to Defendant for transportation purposes; and whether Total Renal

---

[2] Both Parties failed to file separate statement of material facts. The facts set forth in both parties' Motions are deemed admitted to the extent that they are supported by evidence in the record, since no party filed an opposing statement of facts controverting the other party's facts. See S.D. Fla. L.R. 56.1(b); see also Gossard v. JP Morgan Chase & Co., 612 F. Supp. 2d 1242, 1245-1246 (S.D. Fla. 2009).

Care's duty to Mr. Prieto extends to his transportation by a third-party transportation service company. These are discussed below.

## II. DISCUSSION

### A. Motions for summary judgment

#### 1. Summary Judgment Standard

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movin g party." *Damon*, 196 F.3d at 1358. When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

#### 2. Analysis

Plaintiff's Complaint is an action for medical negligence against Total Renal. Florida Statute § 766.106(1)(a) defines a claim for "medical negligence" or "medical malpractice" as "a

claim arising out of the rendering of, or the failure to render, medical care or services." *J.B. v. Sacred Heart Hosp.*, 635 So. 2d 945,948-49 (Fla. 1994). To prevail on a Florida medical-negligence claim, a plaintiff must establish the standard of care that the defendant owed, the defendant's breach of the standard of care, and that the breach proximately caused the damages claimed. Furthermore, in order to qualify as a medical malpractice claim, the wrongful act alleged "must be directly related to the improper application of medical services and the use of professional judgment or skill." *Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468, 469 (Fla. 3d DCA 2006) (citing *Lynn v. Mount SinaiMed. Ctr., Inc.*, 692 So. 2d 1002,1003 (Fla. 3d DCA 1997)). Moreover, the alleged injury "must be a direct result of receiving medical care or treatment by the healthcare provider." *Id.* (citing *Goldman v. Halifax Med. Ctr., Inc.*, 662 So. 2d 367, 371 (Fla. 5th DCA 1995)).

Section 766.102, Florida Statutes, defines the standard of care for medical malpractice claims as "that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." § 766.102(1), Fla. Stat. (2009); *Price v. United States*, No. 3:09-cv-1165-J-MCR, 2012 U.S. Dist. LEXIS 128017, (M.D. Fla. Sept. 10, 2012). A plaintiff bears the burden of proving a breach of the "prevailing professional standard of care for a particular health care provider by the greater weight of the evidence." *Estate of McCall v. United States*, 663 F. Supp. 2d 1276, 1288 (N.D. Fla. 2009) (quotation omitted). Expert testimony is generally required to establish the standard of care prevalent in a particular medical field. *Torres v. Sullivan*, 903 So. 2d 1064, 1068 (Fla. 2d DCA 2005).

### a. **Plaintiff's Motion for Summary Judgment**

Plaintiff sets forth Defendant's alleged duty in an affidavit by an Adult Nurse Practitioner attached to the Complaint. *See* ECF No. 1-1. Pursuant to this affidavit, Defendant's alleged duty was to ensure that Mr. Prieto would leave Defendant's premises via a stretcher and the alleged breach occurred when, on January 2, 2016, Mr. Prieto left Defendant's facilities on a wheelchair. *Id.*

Plaintiff, without citing to any legal authority, and merely by way of copy and pasting excerpts of deposition transcripts, alleges that Defendant admitted its negligence through deposition testimony. More specifically, Plaintiff claims that during his deposition, Dr. Hassan Ali, Mr. Prieto's nephrologist, testified that the recommended mode of transportation for Mr. Prieto's was a stretcher and that he did not order anyone to transport Mr. Prieto via a wheelchair on January 2, 2016. *See* Pls.'s Mot. Summ. J. at 4-5.

Defendant does not contest that it is a statutory healthcare provider and owed a duty of care to the deceased. Defendant also does not deny that the deceased suffered damages on the day of the incident. *See generally* Def.'s Resp. to Mot. Summ. J (ECF No. 43). Rather, Defendant contends that Plaintiff's negligence claim fails because she is unable to establish the second and third elements of negligence – namely, that Defendant deviated from the standard of care and that the alleged breach was the proximate cause of Mr. Prieto's death. *See id.* at 3.

Defendant argues that Plaintiff only cites to partial deposition testimony to allege Defendant's deviation from its standard of care. Defendant cites to the deposition of Alberto Lopez, the supervising nurse at University Plaza, Mr. Prieto's assisted living facility. Nurse Lopez testified that University Plaza was the sole responsible party for directing the transportation company to the proper modality in which Plaintiff needed to be transferred to and from Total Renal Care. *Id.* at 6.

After having examined the record, I find that there exist material factual disputes on whether Defendant deviated from its standard of care, and therefore, decline summary adjudication.

### b. Defendant's Motion for Summary Judgment

Defendant asserts three reasons for the granting of the motion for summary judgment in its favor. First, Defendant argues that any standing medical order related to Plaintiff's method of transportation does not give rise to liability on the part of Total Renal Care. Second, Defendant asserts that Plaintiff cannot show Total Renal Care had a duty to intervene in patients' transportation as this was done through a third-party transportation company. Finally, Defendant maintains that Plaintiff cannot show any causal link between the deceased's injuries and Defendant's alleged breach of duty.

Plaintiff responds by alleging that Mr. Prieto's nephrologist, ordered Mr. Prieto to be transported to and from Defendant's facilities via a stretcher and Defendant deviated from this standard of care by allowing him to leave on a wheelchair. Defendant however, disputes the existence of such an order until two weeks after the incident occurred.

In her affidavit, Ms. Erika Hall, an Adult Nurse Practitioner, opined--- that "if [Mr. Prieto] had been sent home via a properly restrained stretcher in the same manner as his arrival to [Defendant's- Center], he would not have sustained injurie from a sudden traffic stop, as he did on January 2, 2016…" ECF No. 1-1 at 2. If believed, this opinion could support liability of Total Renal Care staff.

Defendant's key witness, Mr. Charles Benedict, a specialized accident reconstruction engineer, opined that Mr. Prieto's mode of transportation was not the cause of his injuries. ECF No. 38-5. Specifically, Mr. Benedict opined that Mr. Prieto was not seat-belted by the driver and had he been transported in a stretcher, he would have likely sustained similar or worse injuries. *Id.* If believed, this opinion could support liability of transportation company for negligence.

Whether it was Mr. Prieto's mode of transportation that caused the damage is a material question of fact in dispute. Therefore, I cannot grant summary judgment in favor of Defendant.

### B. MOTION TO STRIKE DEFENDANT'S EXPERT

#### 1. Standards for Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of Evidence, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir.2005). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: 1) the expert is qualified to testify competently regarding the matters he intends to address; 2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and 3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

The Eleventh Circuit refers to these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004). While these requirements partially overlap, the court must individually analyze each concept. *See id.*

An expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D.Fla. Feb. 27, 2013). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* Rather, where the expert "is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D.Fla.2012). "After the district court undertakes a review of all of the relevant issues and of an expert's

qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, at *3.

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261–62. To make this determination, the district court examines: "1) whether the expert's theory can be and has been tested; 2) whether the theory has been subjected to peer review and publication; 3) the known or potential rate of error of the particular scientific technique; and 4) whether the technique is generally accepted in the scientific community." *Id.* "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262. These are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. *See id.* Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258.

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 Fed.Appx. 816, 823 (11th Cir.2014). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id*. To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir.2004). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id*.

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 [I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence"). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.2002). Ultimately, "a district court enjoys considerable leeway in making" this determination. *Cook*, 402 F.3d at 1103.

## 2. Charles Benedict, PhD.

Total Renal Care proffered an accident reconstruction expert, Charles Benedict, Ph.D., who has opined about the causation of Mr. Prieto's injuries. Plaintiff moves to exclude Mr. Benedict from testifying at trial under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

*See* ECF No. 50. Plaintiff argues that Mr. Benedict's opinion concerning Mr. Prieto's accident is unreliable because Defendant has failed to show how the opinion was tested or can be tested. *Id,* at 4. Plaintiff also argues that Mr. Benedict's opinion was not subject to peer review and publication, has no known potential rates of error and goes beyond his area of expertise.

Having carefully considered the parties' arguments for and against the exclusion at trial of Mr. Benedict's expert opinion, the Court denies the Daubert Motion. Mr. Benedict is sufficiently qualified in terms of both education and experience to provide helpful, relevant testimony that will likely assist the jury in understanding damages in this case, which are "beyond the understanding of the average lay person." *See Frazier*, 387 F.3d 1244, at 1262. Moreover, the Court finds that the proffered expert testimony will have a tendency not to confuse the jury, but rather to "logically advance[] material aspect[s] of the case.'" *See Coral Way, L.L.C. v. Jones*, No. 05-21934-CIV, 2006 WL 5249734, at *2 (S.D. Fla. Oct. 17, 2006) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004)).

Moreover, "[t]he qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009)). The Court has found Mr. Benedict is qualified and proposes to give testimony that passes muster under Daubert. Therefore, he will not be excluded pretrial.

Finally, Federal Rule of Evidence 703 permits an expert to base his opinions on "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Even if the facts or data underlying the expert's opinion would be inadmissible, the opinion itself may be admitted "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.*

Here, Mr. Benedict relied on multiple sources in forming his opinions about the deceased's injuries. First, Mr. Benedict considered Mr. Prieto's medical information; he then went through deposition transcripts of all the witnesses and used technical data to make comparisons. Based on all this information, Mr. Benedict concluded that the driver that picked up Mr. Prieto from Total Renal Care, failed to properly restrain Mr. Prieto in his wheelchair when he placed him in the van to transport him back to University Plaza. Had the driver properly secured Mr. Prieto within the restrain system, Mr. Prieto would have security restrained and not suffered forced sufficient to cause injuries to him. *See* ECF 50-2. While Plaintiff is free to challenge Mr. Benedict's opinions by cross-examining him or by offering

competing expert testimony, nothing suggests that the process by which Mr. Benedict formed his opinions is unreliable. Accordingly, the Court denies Defendant's motion to strike Mr. Benedict's testimony.

### C. MOTION TO STRIKE PLAINTIFF'S RULE 26(A)(2)

#### 1. Rule 26 Expert Disclosure Requirement

Expert disclosures are controlled by Rule 26 of the Federal Rules of Civil Procedure. Rule 26 provides that a party must disclose the identity of any expert witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). The party must make additional disclosures of varying levels of detail depending on whether the witness is a retained or non-retained expert. Fed. R. Civ. P. 26(a)(2).

Even if a party failed to comply with Rule 26, exclusion of the witnesses is not automatic. Instead, the Court must determine whether exclusion is justified under Rule 37(c)(1). *Jones v. Royal Caribbean Cruises, Ltd.*, 2013 WL 8695361, at *4 (S.D. Fla. Apr. 4, 2013). A court can "only strike an expert witness where the party failed to timely disclose a summary or report for that witness if the party had no substantial justification for its failure and/or the failure prejudices the opposing party." *Catalina Rental Apartments, Inc., v. Pacific Insurance Company, Ltd.*, 2007 WL 1050634, *2 (S.D. Fla. April 3, 2007); *United States v. Batchelor-Robjohns*, 2005 WL 1761429 (S.D. Fla. 2005) (citing *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003); *Vance v. United States*, 1999 WL 455435 (6th Cir. 1999); *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)). Striking expert testimony is a harsh sanction that should not normally be imposed "absent a showing of willful deception of 'flagrant disregard' of a court order by the proponent of the evidence." *Catalina Rental Apartments, Inc.*, 2007 WL 1050634, at *3 (quoting *Quinn v. Consolidated Freightways Corp. of Del.*, 283 F.3d 572, 576-77 (3rd Cir.2002)).

#### 2. Nurse Erica Hall

As stated above, Plaintiff set forth Defendant's alleged duty in an affidavit by an Adult Nurse Practitioner attached to the complaint. *See* ECF No. 1-1. Plaintiff thereafter, listed Nurse Erika Hall as their expert witness in their Expert Witness Disclosure.[3] (ECF No. 51-1). Defendant filed its Motion to Strike Plaintiff's Rule 26(a)(2) Disclosure as untimely and

---

[3] Plaintiff failed to file her Rule 26(a)(2) Expert Witness Disclosure with this Court and failed to timely provide Defendant with a copy of it.

incomplete, arguing that "Plaintiff failed to provide an Expert Witness Report" and failed to properly follow the format outlined in Rule 26(a)(2)." *See* ECF No. 51.

While Defendant is correct in stating that Plaintiff failed to comply with this Court's May 29, 2018 Order, setting Civil Trial Date and Pretrial Deadlines, Plaintiff's failure is harmless. Defendant states that "although Defendant knew of Nurse Hall's existence, Defendant was only aware that Nurse Hall was listed in Plaintiff's Witness List, and its Amended Witness List, as a witness and not an expert witness." *Id.* This argument does not sound logical given that the nature of this lawsuit is medical negligence, and, in such actions, expert testimony is generally required to establish the standard of care. *Torres v. Sullivan*, 903 So. 2d 1064, 1068 (Fla. 2d DCA 2005).

Here, Total Renal Care has not shown any prejudice. Plaintiff provided Nurse Hall's affidavit to Defendant back on November 18, 2017, during the presuit discussions. *See* ECF No. 52. Furthermore, Plaintiff attached the same affidavit as an exhibit to the Complaint. *See* ECF No. 1-1. Defendant attached the same affidavit to its Motion for Summary Judgment. *See* ECF No. 38-1. Therefore, Defendant knew or should have known that Nurse Hall was not just a regular witness.

The disclosure that was provided gave Defendant sufficient information to evaluate the tenor of Ms. Hall's testimony. There are no surprises here as Plaintiff made her expert available for deposition and Defendant did in fact take Ms. Hall's deposition. Therefore, in the interests of justice, this Court allows Plaintiff to include Ms. Hall as her expert witness.

### III. CONCLUSION

For the foregoing reasons,

1. Plaintiff's Motion for Summary Judgment (ECF No. 35) is **DENIED**;

2. Defendants' Motion for Summary Judgment (ECF No. 38) is **DENIED AS MOOT** in light of Defendant's Amended Motion for Final Summary Judgment;

3. Defendant's Amended Motion for Final Summary Judgment (ECF No. 41) is **DENIED**.

4. Plaintiff's Motion to Strike Defendant's Expert (ECF No.50) is **DENIED**.

5. Defendant's Motion to Strike Plaintiff's Rule 26(a)(2) Expert Witness Disclosure is **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida, this 18th day of June 2019.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*